1

**JOSEPH W. CHARLES, P.C.**
**5704 West Palmaire Avenue**
2   **P.O. Box 1737**
**Glendale, Arizona 85311-1737**
3   **Tel:  (623) 939-6546**
**Fax:  (623) 939-6718**
4
LawOffice@joecharles.com
5   JOSEPH W. CHARLES
State Bar No. 003038
6

7              IN THE UNITED STATES DISTRICT COURT

8                  FOR THE DISTRICT OF ARIZONA

9

10   In re the Matter of:

11   **MARTHA RODRIGUEZ,** a single        Case No.  CV-09-01853-PHX-FJM
woman,
12
**PLAINTIFF'S RESPONSE TO**
Plaintiff,        **DEFENDANT WELLS FARGO**
13                                      **BANK, N.A.'S RULE 12(C)**
vs.                                 **MOTION FOR JUDGMENT ON**
14                                      **THE PLEADINGS**
**QUALITY LOAN SERVICE CORP.** a
15   California corporation licensed to do   (Assigned to the Honorable
business in the State of Arizona,      Frederick J. Martone)
16   **MIDFIRST BANK** a nationally chartered
bank, and their subsidiary **MIDLAND**
17   **MORTGAGE COMPANY**, an Oklahoma   **(ORAL ARGUMENT**
Corporation licensed to do business in the **REQUESTED)**
18   State of Arizona, **WELLS FARGO**
**BANK, N.A.,** a national banking
19   association licensed to do business in the
State of Arizona. **TRES AMIGOS**
20   **PROPERTIES LLC**, an Arizona limited
liability company, **XYZ**
21   **CORPORATIONS 1-10**, **JOHN and**
**JANE DOES 1-10**, **BLACK**
22   **PARTNERSHIPS 1-10**
Defendants.
23

24

25

26          Comes  now  the  Plaintiff,  Martha  Rodriguez,  by  and  through  counsel

27   undersigned, and respectfully requests the court to deny Defendants Wells Fargo

28   Bank, N.A's Rule 12(C) Motion for Judgment on the Pleadings.

1

This Response is based upon the following Memorandum of Points and Authorities.

**RESPECTFULLY SUBMITTED** this 6th day of August, 2010.


**JOSEPH W. CHARLES, P.C.**


By:    __/s/__Joseph_Charles___
**JOSEPH W. CHARLES**
Attorney for Plaintiff


**MEMORANDUM OF POINTS AND AUTHORITIES**


**1.     Introduction**

Wells Fargo Bank, N. A. ("Wells Fargo") makes numerous statements in their Motion for Judgment on the Pleadings which incorrectly states the Plaintiff's allegations.  First, Wells Fargo claims that the Plaintiff's expectation that Wells Fargo would fund the reverse mortgage was created by the mere acceptance of her loan application.  The First Amended Complaint ("Complaint") and disclosure materials cannot be fairly be read to arrive at this conclusion.  The Complaint clearly stated in paragraph 14, "[p]laintiff was assured by Wells Fargo that Plaintiff qualified for the reverse mortgage and that payment would be made by Wells Fargo to Midland for any delinquent payments on the underlying note, which was secured by the Deed of Trust on the property."  Thus, it was plainly the promise that Wells Fargo could fix her clearly illustrated problem which gives rise to her complaint and not a mere acceptance of her loan application.  Wells Fargo was given discovery material which included emails from their employees wherein the Plaintiff was

1   specifically told that Wells Fargo would fix her problem, not merely consider her

2   application.

3          Wells Fargo represents to this Court that the Plaintiff did not allege that she

4   made Wells Fargo representatives aware of the fact that Midland was conducting a

5   Trustee's Sale.  This is plainly false.  Paragraphs 14 and 15of the Complaint, among

6   others, make it perfectly clear that the reverse mortgage was necessary to pay the

7   
8   delinquencies owed to Midland.  Furthermore, a fair reading of those paragraphs

9   provides the clear implication that Wells Fargo knew about all of the details

10  surrounding the reverse mortgage before they "assured" her that delinquent

11  payments would be taken care of.

12  
13         Wells Fargo is correct that the Plaintiff did not allege any facts suggesting

14  that "Wells Fargo failed to take necessary steps to approve the loan."  This is

15  because Plaintiff was told that it was within Wells Fargo's power to approve the loan

16  and fix Plaintiff's predicament.  The fact that Wells Fargo failed establishes that

17  some mistake was made on their end.  The precise point of failure is impossible for

18  the Plaintiff to identify.  Depositions were scheduled by the Plaintiff in order to find

19  
20  out exactly what went wrong, but were delayed because of this Motion before the

21  Court.  Therefore, through a res ipsa loquitor type of reasoning, it speaks for itself

22  that if a party promises to do something and has the power to do it; it must be their

23  fault when it fails.

24  
25         Wells Fargo attempts to box the Plaintiff into a situation where she must

26  declare the interactions are either contractual or tort based.  The Complaint clearly

27  indicates that there is a mixture of allegations.  Wells Fargo argues at times that the

28  

3

1   allegations arise out of contract and at other times that the Complaint sounds in tort

2   all depending upon their best interest.

3       **2. Legal Principles and Authority.**

4       The pleading rules Plaintiff is required to adhere to are "liberal notice

5   pleading standards." _Ra Med. Sys. v. PhotoMedex, Inc._, 2010 U.S. App. LEXIS

6
7   7346 (9th Cir. Cal. Apr. 9, 2010).  "Under the new rules of procedure the test as to

8   whether a complaint is sufficient to withstand a motion to dismiss is whether enough

9   is stated therein which, if true, would entitle plaintiff to some kind of relief on some

10  theory. The court should not grant a motion to dismiss unless it appears certain that

11  the plaintiff would be entitled to no relief under any state of facts which is

12
13  susceptible of proof under the claim as stated."  Rule 8(a), Rules of Civil Procedure

14  1956, section 21-404, A.C.A. 1939; 2 Moore's Federal Practice, par. 8.13; 6 Moore's

15  Federal Practice, par. 54.60.  Wells Fargo cites _Bell Atl. Corp. v. Twombly_, 550 U.S.

16  544 (U.S. 2007) as if it emphatically supports their claim that the Complaint is

17  factually insufficient.  However, that same case had the following full recitation of the

18  law:

19

20      **Federal Rule of Civil Procedure 8(a)(2) requires only "a short and**
    **plain statement of the claim showing that the pleader is entitled to**
21  **relief," in order to "give the defendant fair notice of what the . . .**
    **claim is and the grounds upon which it rests," _Conley v. Gibson_,**
22  **355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a**
    **complaint attacked by a Rule 12(b)(6) motion to dismiss does not**
23  **need detailed factual allegations, ibid. ; _Sanjuan  v. American Bd._**
    **_of Psychiatry and Neurology, Inc._, 40 F.3d 247, 251 (CA7 1994), a**
24  **plaintiff's obligation to provide the "grounds" of his "entitle[ment]**
    **to relief" requires more than labels and conclusions, and a**
25  **formulaic recitation of the elements of a cause of action will not**
    **do.**
26

27

28

4

Id. at 555.   Clearly, this is not a situation where the Court has not been given a factual scenario to fit into the legal principles.  Wells Fargo is arguing the weight of the evidence before it has even been presented.

**3. Specific Counts in the Complaint.**

**A. Negligence.**

Again, it is impossible for the Plaintiff to know precisely what went wrong within Wells Fargo's control.  The Plaintiff knows only that she was assured Wells Fargo had the power to stop the foreclosure and that for some reason Wells Fargo failed to deliver.  Similar claims have been allowed under the res ipsa loquitor theory.  Here, Wells Fargo was in complete control of the funding.  Despite having complete control of the situation Wells Fargo failed to deliver as promised.  It is clear that Wells Fargo acted negligently in some fashion.  The exact nature of their negligence will likely be determined when Wells Fargo allows their employees to be deposed.

**B. Estoppel.**

Wells Fargo again distorts the Plaintiff's arguments.  When fairly read, the Complaint is clear that the Plaintiff was promised that her delinquency problems would be fixed by Wells Fargo's product.  The Complaint specifically stated that the Plaintiff relied upon Wells Fargo's promise to her detriment.  The Plaintiff could have sought another reverse mortgage lender or decided to sell the home, but did not because she trusted a big name like Wells Fargo to keep their promise.

**C. Negligent misrepresentation.**

Wells Fargo for at least the third time misstates that there were no promises to the Plaintiff.  The Plaintiff was promised in no uncertain terms that Wells Fargo

5

would issue her a loan and fix the delinquency.  The Complaint uses the word "assure."  Whatever the specific word used, the totality of the Complaint makes it clear that Plaintiff was promised that Wells Fargo would fix her delinquency issues.

Wells Fargo relies on a very semantic argument in an attempt to defeat the negligent misrepresentation allegation.  Wells Fargo claims that the assertion that Wells Fargo could save the Plaintiff's home is not a "fact."  A fact is something that can be proven or disproven.  Here, we have a financial institution with tremendous resources.  Certainly it is a fact that they have the power to fund a reverse mortgage if they so choose.  This can be proven simply by looking at the amount of money it would cost to cure the delinquencies and then looking at the money available and doing simple subtraction.

**D. Emotional Damages.**

Paragraph 33 of the Complaint states, "[p]laintiff has suffered emotional and financial damages as a result of the negligence of Wells Fargo in an amount to be proven at trial.  Yet Wells Fargo states to this Court that, "[p]laintiff has not even pleaded that she suffered any emotional distress."  This paragraph is sufficient to put Wells Fargo on notice that the Plaintiff did indeed suffer emotional distress as a result of their actions.

**E.  Punitive Damages.**

Plaintiff believes that Wells Fargo's behavior throughout this process has been egregious because of the tremendous consequences that they knew would happen, but apparently did not care enough to give the attention they promised. The Plaintiff is now homeless and nearly penniless at an advanced age.  Wells

Fargo's knowledge of these facts amplify the outrage a citizen of Arizona would feel at their behavior.

**4. Conclusion.**

Despite Wells Fargo's attempt to convince this Court of the contrary, the Complaint made the Plaintiff's position very clear that Wells Fargo presented to her as a fact and a promise that Wells Fargo would save her house.  The Plaintiff cannot be expected to know the exact reason that Wells Fargo failed to deliver.  Everything was within Wells Fargo's power and control just like accident cases under res ipsa loquitor.  Therefore, this Court should allow the Plaintiff's claims to go forward so that she may depose the Wells Fargo employees and present her case to a jury of her peers.

**DATED** this 6th Day of August, 2010.


                                        **JOSEPH W. CHARLES, P.C.**


                                        By:     /s/ Joseph W. Charles
                                        **JOSEPH W. CHARLES**
                                        *Attorneys for Plaintiff*

ORIGINAL filed this 6th day of
August, 2010, with:

Clerk of the Court


COPY of the foregoing mailed this 6th
day of August 2010, to:


Paul M. Levine
McCarthy Holthus Levine
3636 North Central Ave., Suite 1050
Phoenix, AZ 85012
Attorneys for Midfirst Bank
and Midland Mortgage Company

Geoffrey S. Kercsmar
Jenessa G. B. Coccaro
KERCSMAR & FELTUS PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Attorneys for Wells Fargo

   /s/   C. Short

8